JAMES B. CHANIN (SBN# 76043)
JULIE M. HOUK     (SBN# 114968)
LAW OFFICES OF JAMES B. CHANIN
3050 Shattuck Avenue
Berkeley, California  94705
Telephone:   (510) 848-4752, Ext. 2
Facsimile:     (510) 848-5819

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UGANDA KNAPPS,<br><br>  Plaintiff,<br><br>  vs.<br><br>CITY OF OAKLAND,  et al.,<br><br>  Defendants. | Case No.:  C05-2935 MEJ<br><br>**PLAINTIFF'S  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE, TO ALTER OR AMEND THE JUDGMENT**<br><br>**Hearing Date: September 24, 2009<br>Time:   10:00 a.m.<br>Courtroom B, 15th Floor** |

# TABLE OF CONTENTS

**I.  INTRODUCTION**   1

**II. SUMMARY OF THE EVIDENCE**   1

**III. ARGUMENT**   9

**A.  Applicable Standards under F.R.C.P. 59**   9

**B.  Defendants Have Failed to Demonstrate that they Are Entitled to a New Trial, or Alternatively, for and Order Amending or Altering the Judgment Based Upon Manifest Error of Law or Facts**   10

**1.  No Manifest Error has Been Shown Based on Michael Fowler's Medical Records**   10

**2.  Defendants Failed to Establish any Manifest Error of Fact or Law With Regard to the Award of Damages for Plaintiffs' Wage Loss**   12

**3.  The Court Committed no Manifest Error in Determining Officer Cardoza Used Excessive Force on Plaintiff**   13

**4.  The Court Committed No Manifest Error in Awarding Punitive Damages to Plaintiff**   14

**IV. CONCLUSION**   15

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

. - i

# TABLE OF AUTHORITIES

**CASES**

*Alphonso v. Esfeller Oil Field Constr.*
2009 U.S. Dist. LEXIS 29886 (S.D. Ala. 2009) ............ 10

*BMW of North America, Inc. v. Gore*
517 U.S. 559, 574-75 (1996) ............ 15

*Brown v. Wright*
588 F.2d 708 (9th Cir. 1978) ............ 9

*Browning-Ferris Indus. V. Kelco Disposal, Inc.*
492 U.S. 257 (1989) ............ 9

*Borunda v. Richmond,*
885 F. 2d 1384 (9th Cir. 1988) ............ 12

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*
532 U.S 424 (2001) ............ 15

*Coughlin v. Tailhook Ass'n.*
112 F.3d 1052  (9th Cir.1997) ............ 9

*Desrosiers v. Flight International Of Florida Inc.*
156 F.3d 952 (9th Cir. 1998), *cert denied,* 525 U.S. 1062 (1998) ............ 9

*In re Exxon Valdez*
270 F.3d 1215 (9th Cir. 2001) ............ 15

*Graham v. Connor*
490 U.S. 386 (1989) ............ 13

*Muniz v. Amec Constr. Mgmt.*
2009 U.S. Dist. LEXIS 41947 (C.D. Cal. 2009) ............ 9,10

*Price v. Household Int'l Group Ins. Plan*
2008 U.S. Dist. LEXIS 89195 (C.D. Cal. 2008) ............ 9

*Sibley v. Lemaire*
184 F.3d 481, 487 (5th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000) ............ 9

*Smith v. Wade*
461 U.S. 30 (1983) ............ 15

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

. - ii

*State Farm Mut. Auto. Ins. Co. v. Campbell*
538 U.S. 408, 418 (2003)                                                                                    15

*Templet v. HydroChem Inc.*
 367 F.3d 473, 478-79 (5th Cir. 2004), *cert. denied,* 543 U.S. 976 (2004)     9

*Zahn v. Harvey*
2009 U.S. Dist. LEXIS 10102 (D. Wash. 2009)                                              10

**STATUTES**

42 U.S.C. Section 1983

California Civil Code Section 50                                                                     8

California Labor Code Section 3700.5                                                           7

California Welfare and Institutions Code Section 5150                                3,4,6

F.R.C.P. 59                                                                                                         9

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

## I. INTRODUCTION

The evidence at trial fully supported the Court's determination that Plaintiff, Uganda Knapps, did not subject Michael Fowler to the vicious and merciless beating claimed by Oakland Police Officers Michael Cardoza and Francisco Rojas and that the officers fabricated the account of the beating to cover for Officer Cardoza's use of excessive force on the Plaintiff. (Findings of Fact and Conclusions of Law, 1:13-29:10).

Nevertheless, Defendants now contend that the Court committed manifest error by allegedly "overlooking" Michael Fowler's AMR ambulance and Highland Hospital records and by failing to adopt Anthony Hodges' inconsistent and incredible testimony that Mr. Knapps should not have used even reasonable force to prevent Mr. Fowler's suicide. (Def. Motion for New Trial, 3:16-5:2; 6:1-9:7).

As shown more fully below, new trials are not to be granted lightly and require a showing that the Court committed manifest error of law or fact in reaching its decision. The Defendants have failed to show that the Court committed any error, let alone any manifest error, in rendering judgment in favor of Plaintiff, Uganda Knapps.

## II. SUMMARY OF THE EVIDENCE

The Court's extensive Findings of Fact and Conclusions of Law (hereinafter, FFCL) summarized the material evidence presented at trial in detail. (FFCL, 1:13-29:10). As noted by the Court, the parties gave widely divergent accounts of the incident and the outcome of the trial depended largely on credibility determinations. Id. at 1:25-28.

The evidence relied on by the Court in the FFCL showed that Mr. Knapps was employed at the Hodges Residential Facility on the date of the incident and that he had been involved in two prior incidents involving Mr. Fowler which were resolved appropriately with the assistance of law enforcement. Id. at 2:1-20.

The Court also cited evidence which showed that on the night of the subject incident, when Mr. Fowler left the Hodges Facility, Mr. Knapps's employer directed him to follow Mr. Fowler so that he would not be struck by a car. Id. at 3:26-4:1. As Mr. Knapps followed Mr.

Knapps v. City of Oakland, et al.. Case No.: C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

. - 1

Fowler, the evidence showed that Mr. Fowler was running in and out of the street, ignoring traffic, and that Plaintiff placed a "911" call to request police assistance. Id. at 4:2-5.

The Court also cited evidence showing that while Mr. Knapps was on his cell phone with the "911" dispatcher, he remained calm and professional, and was clearly concerned about Mr. Fowler's welfare and safety, despite Mr. Fowler's refusal to cooperate with Plaintiff's efforts to get him to return to the Hodges facility. Id. 4:6-5:10.

The evidence showed that when Sgt. Kelly drove past the location where Mr. Knapps and Mr. Fowler were located, the Plaintiff stepped toward the street to try and flag him down and that Mr. Fowler tried to run around the Plaintiff and into the street. Id. at 5: 10-22. Sgt. Kelly admitted that while he heard a dispatch concerning a "5150" situation, he did not sense any urgency or emergency when he drove past the Plaintiff and Mr. Fowler. He observed them waiving at him, but interpreted it as a friendly gesture. *Id*. at 5:23-6:2.

The Court also noted in its decision that the "911" call captured the sound of a very brief, one to two second scuffle and that Sgt. Kelly never saw Mr. Knapps punch Mr. Fowler in the face or throw him against a garage door at any time, and only saw Mr. Knapps push Mr. Fowler out of the street. Id. at 6:3-15.

The Court also cited Plaintiff's testimony in which he denied beating Mr. Fowler and testified that he had only taken Mr. Fowler to the ground to prevent him from entering the roadway. Id. at 6: 12-14. The "911" recording cited by the Court, also corroborated Mr. Knapps' account that he took Mr. Fowler to the ground in a bear-hug type maneuver because he reported to the dispatcher during this contemporaneous conversation that Mr. Fowler tried to run into the street. Id. at 6:3-17.

As noted in the Court's FFCL, Officers Cardoza and Rojas presented a materially different account of the incident, in which they claimed Mr. Knapps viciously beat Mr. Fowler, including by punching him with a closed fist multiple times in the face and torso. Id. at 6:18-8:2; 13:23-15:12). Based on the totality of the evidence, and having observed the demeanor of the witnesses who testified at the trial, the Court could have reasonably found Mr. Knapps' account

Knapps v. City of Oakland, et al.. Case No.: C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

. - 2

more credible and concluded that the officers fabricated the beating of Mr. Fowler to cover for Officer Cardoza's use of excessive force on Mr. Knapps.  FFCL, 1-53.

Despite substantial evidence supporting the Court's determination that the vicious attack claimed by Officers Cardoza and Rojas did not occur, Defendants now contend that Mr. Fowler's AMR ambulance and Highland Hospital records support an inference that their account of Mr. Knapps' vicious attack on Mr. Fowler is true and that they are entitled to a new trial, or the alteration or amendment of the judgment, based on these records. These records, however, are far from conclusive, or even persuasive, proof that Mr. Knapps viciously punched Mr. Fowler in the face and torso repeatedly as claimed by Officers Cardoza and Rojas given the totality of the evidence supporting the judgment.

Preliminarily, it should be noted that Defendants chose not to call any of Mr. Fowler's medical providers to testify at trial to confirm the source and content of the information contained in these records or about the causation of any alleged pain or injuries to Mr. Fowler. While Plaintiff stipulated to the authenticity of these records (Rosen Decl. Ex. 3), Plaintiff expressly retained the right to dispute the meaning, weight, relevancy and importance of these records at trial.  *Id.*

As noted in the Court's FFCL, the evidence showed Sgt. Kelly knelt down next to Mr. Fowler after Mr. Knapps was detained in handcuffs and he did not notice any injuries or redness to Mr. Fowler's face, or to any other part of Mr. Fowler's body, notwithstanding the vicious assault claimed by Officers Cardoza and Rojas.  He also never heard Mr. Fowler complain of any pain. (FFCL 12:8-11).  The Court also noted that Sgt. Kelly testified that no one told him that they saw any injuries to Mr. Fowler before he was taken away from the scene by ambulance. Id. 12:16-17.

The first page of Mr. Fowler's AMR records state the chief complaint and history (Hx) as: 5150,[1] Med Clearance with "possible fight."  (Rosen Decl., Ex. 2, AMR records, page 1).

---

[1] As the Court noted, "5150" refers to California Welfare and Institution Code Section 5150, which provides that: "when any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, …or other professional person designated by the county may, upon probable cause, take, or cause to be

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

The second page of the AMR records reflect that Mr. Fowler did not sign the Master Signature Statement and it was reported he was "developmentally challenged." (Rosen Decl, Ex. 2, page 2). The PreHospital Care report, which appears as page three of this record, is not entirely legible and Defendants failed to call any witness to interpret the illegible portions of the record. (Rosen Decl., Ex. 2, p. 3). Although the PreHospital Care report makes a reference to Mr. Fowler being hit with a closed fist, the report does not cite the source of this information. *Id*.

However, a reasonable inference that the Court could have drawn from the evidence is that the AMR report was based on Officer Rojas' fabricated account of the assault. Specifically, Mr. Knapps testified that while he was in the custody of Sgt. Kelly, he heard Officer Rojas falsely tell the AMR paramedics that Mr. Knapps had "beat the shit out of a retarded kid," and used gestures to falsely describe that Mr. Knapps beat and stomped on Mr. Fowler. (Trial Tr., Day 3 at 139:9-140:14).

This inference is further supported by Officer Rojas' testimony, cited by the Court in the FFCL, in which he admitted he told the paramedics that Mr. Fowler had been assaulted and that he may have also told them that Mr. Fowler had been punched around the eye. (FFCL, 12: 18-21). Therefore, the Court had ample evidence on which to conclude that Officer Rojas' fabricated account of the assault was the source of the information contained in the AMR record and therefore, discounted the importance or materiality of this record in rendering judgment in Plaintiff's favor.

Mr. Fowler's Highland Hospital records similarly fail to establish that the Court committed manifest error, As is the case with the AMR records, some of the entries on the Highland Hospital records are not clearly legible and Defendants failed to call any of the Highland Hospital treating staff to testify as to the source, content or interpretation of the information contained in these records. (Rosen Decl., Ex. 2).

---

taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental health as a facility for 72-hour treatment and evaluation." Defendants presented no evidence showing Mr. Fowler was not properly detained on a 5150 hold under this statute.

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

While Defendants argue that these records support the credibility of Defendants' account that Mr. Knapps brutally beat Mr. Fowler by punching him repeatedly with a closed fist in the face and torso during the incident on the public sidewalk, the Highland Hospital records state in two separate places that Mr. Fowler's alleged complaints of pain occurred as a result of an incident ***inside Mr. Fowler's home***, rather than outside, on the public sidewalk. Highland Hospital Emergency Department Flow Sheet and Emergency Department Record (Rosen Decl., Ex. 2). Defendants failed to call any of Mr. Fowler's medical providers at Highland to explain the source of this information and it is clearly not consistent with the evidence that the incident involving the Plaintiff occurred outside, some distance away from the Hodges residential home.

As Defendants note in their motion, the Emergency Department Flow Sheet also appears to state that Mr. Fowler's head hit down when he was pushed backwards. (Def. Mot. For New Trial, 3:20-23). While Defendants also claim that this record says it was an "employee" who pushed him backwards, the report is not clearly legible, and it does not identify by name the person who allegedly pushed him. Defendants also ignore that this record would be consistent with Mr. Knapps' use of reasonable force in taking Mr. Fowler to the ground to prevent his suicide.

The Highland Record also noted the severity of Mr. Fowler's complaints was only 1 on a 10 point scale. (Rosen Decl., Ex. 2, Highland Hospital Triage Chart). Therefore, another reasonable inference from these records is that Mr. Fowler's alleged complaint of minor pain was more likely attributable to Mr. Knapps' reasonable use of a bear-hug take down to the sidewalk to prevent Mr. Fowler's suicide, than the result of a vicious beating consisting of repeated punches to Mr. Fowler's face and torso which would have more likely than not resulted in an injury with pain more severe than a 1 on a 10 point pain scale.

Additionally, Defendants ask the Court to take these records on face value without considering the veracity of Mr. Fowler's own accounts about the incident. Clearly, the Court had the discretion to take Mr. Fowler's credibility into account in considering these records.

First, as noted above, Mr. Fowler was mentally impaired to such a degree he was placed on a 5150 hold and it was noted he was unable to sign off on the AMR records. Moreover, while

Knapps v. City of Oakland, et al.. Case No.: C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

the AMR record noted that Mr. Fowler reported he had tried to commit suicide by walking into traffic (Rosen Decl., Ex. 2, PreHospital Care Report), the Highland Hospital record states that Mr. Fowler gave an entirely inconsistent account and denied suicidal ideation (SI) or that he intended to walk into traffic. (Rosen Decl., Ex., 2, Highland Campus Emergency Department Record.).

Given these facts, a reasonable inference could also be drawn that Mr. Fowler's account of the incident is not credible, including with respect to any reports he gave to medical providers about the alleged mechanism of injury. This is particularly true when he gave inconsistent accounts of his plan to commit suicide to medical providers and he had a motive to retaliate against Mr. Knapps for interfering with his suicide which ultimately ended with his involuntary psychiatric hold at Highland Hospital.[2] An inference that could also be drawn from the evidence is that the Highland Hospital medical staff relied on Officer Rojas' fabricated account of the alleged assault, which was incorporated in the AMR Prehospital care report.

While the Highland Hospital record mentions a complaint of orbital and right cheek pain and a contusion that is not specific as to location, size or causation, Defendants failed to present any evidence conclusively establishing that this alleged pain or unspecified contusion were caused by the alleged violent assault of Mr. Knapps as claimed by Defendants, rather than as a result of Mr. Knapps' reasonable use of force in taking Mr. Fowler to the ground.

Therefore, based on the totality of the evidence, Defendants failed to establish that the Court committed manifest error in determining that Mr. Knapps' account of the incident was more credible than the accounts of Officers Cardoza and Rojas based on the aforementioned medical records and in light of the substantial evidence supporting Plaintiff' claims.

Rehashing their closing argument and the contentions raised in their proposed Findings of Fact and Conclusions of law, Defendants also argue that the Court committed manifest error in awarding any damages at all to Plaintiff for his wage loss. The sole basis for Defendants'

---

[2] Mr. Fowler did not sign the voluntary admission form in the Highland Records. A staff member, instead, reported that he was being detained under Welf. & Inst. Code 5150 as a danger to himself. (Rosen Decl., Ex. 2, Highland Hospital, Close Observation Area, Psychiatric Emergency Service, Patient Advisement).

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

contention in this regard is the inconsistent and thoroughly discredited trial testimony of Mr. Knapps' former employer, Anthony Hodges.

The evidence at trial supported the reasonable inference that Mr. Knapps' wage loss was proximately caused by the wrongful conduct of Defendants. This evidence included Officer Cardoza's admission that he told Mr. Hodges that Mr. Knapps struck Mr. Fowler in the face on the night of the incident when, based on the totality of the evidence, this was not true. (FFCL, 12:1-13:21).

Although the Court found that Mr. Hodges did not observe any injuries to Mr. Fowler and did not report to the Department of Social Services that he saw any injuries, Mr. Hodges told Mr. Knapps that he would be removed from work until the allegations were resolved. The night of this incident was the last time Mr. Knapps worked at the Hodges facility. (FFCL, 16:12-17:18; Trial Tr. Day 3, 144:10-145:16).

Subsequently, Mr. Knapps learned that Mr. Hodges illegally failed to have worker's compensation insurance coverage when he sought medical treatment for the injuries he suffered as a result of Officer Cardoza's use of force. (FCCL 17:16-18; Trial Tr. Day 3, 145:17-150:5).

Therefore, by the time the trial in this case took place, Anthony Hodges clearly had an ax to grind with Mr. Knapps after the Plaintiff exposed his illegal failure to have worker's compensation insurance coverage. (See, Trial Transcript Day 3, 217:20-218:9; California Labor Code Section 3700.5).

When Mr. Hodges was called as a witness by the defense at trial, he attempted to claim that he saw a bruise to the back of Michael Fowler's neck after he returned to the facility from Highland Hospital. However, no one else involved in the case, including Hodges facility employee, Jesse McDaniels (FFCL, 17:19-18:20), ever reported seeing any injury to the back of Mr. Fowler's neck. Moreover, Mr. Hodges' claim was belied by his own written report to the California Department of Social Services (which he admitted signing on the night of the incident) in which he represented that Mr. Fowler had sustained no injuries, including any bruises, cuts or lacerations. (Trial Transcript, Day 3, 214:14-216:4, Ex. 42, Vendor's Special Incident Report). Mr. Hodges also admitted that he never reported in that form that Mr. Fowler

had been punched during the incident or that Mr. Fowler ever told him that he had been punched by Mr. Knapps. Id.

Mr. Hodges' testimony that he saw an injury on Mr. Fowler following the incident was also belied by the tape recorded statement he gave to Sgt. Short of the Oakland Police Department on November 16, 2004, in which Mr. Hodges admitted never seeing any injury on Mr. Fowler, never mentioned that Mr. Fowler told him that Mr. Knapps allegedly assaulted him and admitted that all of the information he received came from the police officers at the scene. (Id. at 216:5-217:19, Ex. 39, CD of Mr. Hodges' statement). Mr. Hodges also told Sgt. Short that Mr. Fowler had never complained about Mr. Knapps prior to the incident. (Ex. 39, CD Rom of Mr. Hodges' statement; Trial Transcript, Day 3, 218:10-219:5).

Mr. Hodges' most incredible and suspect testimony came when he gave inconsistent accounts about whether Mr. Knapps was allowed to physically restrain Mr. Fowler at all to prevent his suicide. (Id., 219:20-221:8). As the Court correctly noted in its FFCL, Mr. Hodges' testimony on this issue varied on direct, cross-examination and re-direct. Furthermore, Mr. Hodges' contention that Mr. Knapps had no right to forcibly stop Mr. Fowler from committing suicide is also not supported by California Civil Code Section 50. Had Mr. Knapps failed to stop Mr. Fowler from running into the street and he was severely injured or killed as a result, a reasonable inference is that it is unlikely Mr. Hodges would have endorsed such a disregard for the safety and life of Mr. Fowler and that his testimony to the contrary is not credible.

In light of his inconsistent and incredible testimony, the Court could have reasonably determined that Mr. Hodges was biased against Mr. Knapps and that his testimony was not credible. Therefore, Defendants failed to show that the Court committed any manifest error in its award of wage loss to Mr. Knapps based on Mr. Hodges' testimony.

Defendants' motions for new trial and to alter or amend the judgment with respect Officer Cardoza's use of excessive force and the award of punitive damages to Plaintiff are based on the same flawed analysis stemming from the AMR and Highland Hospital medical records, *supra*. Therefore, Defendants have failed to establish that the Court committed any

manifest error in rendering judgment in favor of Plaintiff as a result of Officer Cardoza's use of excessive force or with respect to the award of punitive damages.

### III. ARGUMENT

**A. Applicable Standards under F.R.C.P. 59**

Under Rule F.R.C.P. 59(a)(2), a court may grant a new trial or amend its judgment after a court-tried action for three reasons: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence. *Brown v. Wright*, 588 F.2d 708 (9th Cir. 1978); *Price v. Household Int'l Group Ins. Plan*, 2008 U.S. Dist. LEXIS 89195 (C.D. Cal. Oct. 7, 2008); *Muniz v. Amec Constr. Mgmt.*, 2009 U.S. Dist. LEXIS 41947 (C.D. Cal. 2009). Under that standard, "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000).

The scope and nature of a Rule 59(e) motion, to alter or amend the judgment, calls into question the correctness of a judgment and is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004), *cert. denied,* 543 U.S. 976 (2004). Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.*

A district court's ruling on a motion for new trial pursuant to Federal Rule of Civil Procedure 59 is reviewed for abuse of discretion. *Browning-Ferris Indus. V. Kelco Disposal, Inc.*, 492 U.S. 257, 278 (1989). A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts. *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1055 (9th Cir.1997). A district court's denial of a motion for a new trial will not be overturned absent a clear abuse of discretion. *Desrosiers v. Flight International Of Florida Inc.*, 156 F.3d 952, 957 (9th Cir. 1998), *cert denied,* 525 U.S. 1062 (1998).

Under Rule 59, courts have repeatedly denied motions for new trial and to alter or amend findings based on a claim of manifest error of fact under Rule 59 where the moving party merely

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

points to evidence in its favor and ignores other evidence supporting the Court's contrary conclusion.

For example, in *Muniz, supra,* 2009 U.S. Dist. LEXIS 41947, the District Court denied plaintiff's motion for a new trial under F.R.C.P. 59(a)(2) where the plaintiff failed to establish that there was no evidence supporting the judgment in defendants' favor and merely cited to evidence supporting his own position.

Similarly, in *Alphonso v. Esfeller Oil Field Constr*., 2009 U.S. Dist. LEXIS 29886 (S.D. Ala. 2009), the Court denied a new trial motion on damages following a bench trial. Although the plaintiff cited evidence in support of a higher award of damages, the Court cited other evidence supporting its lower award, thereby finding no manifest error of fact.

In *Zahn v. Harvey*, 2009 U.S. Dist. LEXIS 10102 (D. Wash. 2009), the District Court stood by its factual determinations in declining to grant a new trial or to alter or amend the judgment when it considered the evidence presented at trial as a whole and determined that the judgment for the defense was proper.

As discussed above and below, Defendants have failed to establish that they are entitled to a new trial or that the judgment should be altered or amended based on any manifest error of law or fact. They have also failed to cite to any newly discovered evidence or any other legal basis for granting them the extraordinary relief they seek. Therefore, the judgment in Plaintiff's favor should stand.

**B. Defendants Have Failed to Demonstrate that they Are Entitled to a New Trial, or Alternatively, for and Order Amending or Altering the Judgment Based Upon Manifest Error of Law or Facts**

**1. No Manifest Error has Been Shown Based on Michael Fowler's Medical Records**

The Court committed no manifest error based upon Defendants' contention that the Court allegedly "overlooked" Michael Fowler's medical records. As shown above, the AMR and the Highland Hospital Records do not establish as a matter of law that Mr. Knapps brutally beat Mr. Fowler as was alleged by Officers Cardoza and Rojas. Instead, reasonable inferences that can be drawn from the evidence as a whole are that Mr. Knapps did not viciously assault Mr. Fowler

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

and that both Sgt. Kelly and the contemporaneous "911" tape support the Court's determination that Mr. Knapps' account was more credible than the accounts of Officers Cardoza and Rojas.

In addition, Sgt. Kelly never observed any injury to Mr. Fowler, Mr. Fowler did not tell him he was injured and no one else told Sgt. Kelly Mr. Fowler was injured before Mr. Fowler was taken to Highland Hospital on a "5150" hold.

Moreover, both the testimony of Officer Rojas and Mr. Knapps supported a reasonable inference that the reference to Mr. Fowler being struck in the head in the AMR record was based on Officer Rojas' fabricated account. In addition, a reasonable inference could be drawn that the source of any pain suffered by Mr. Fowler, assuming there was any, was due to the reasonable use of force by Mr. Knapps in restraining him from committing suicide by taking him to the ground, and not as a result of the violent beating claimed by Officers Cardoza and Rojas.

Similarly, the Highland Hospital records, which were unsupported by any medical testimony introduced by Defendant, stated in two places that Mr. Fowler's complaints stemmed from an incident *inside his home*, rather than on the public sidewalk where the subject incident indisputably took place.

Furthermore, while the Highland records state that Mr. Fowler's head hit down when he was pushed backwards, this mechanism of injury would be consistent with Mr. Knapps' reasonable use of force in taking him to the ground to prevent his suicide. This is particularly true where the Highland records indicate the severity of Mr. Fowler's alleged injury was only 1 out of a 10 point scale, consisted of right check pain and a contusion that was apparently so minor that the records contained no specific documentation as to its location, size or any treatment given to Mr. Fowler on account of it.

Since the evidence also supports the reasonable conclusion that Mr. Fowler gave inconsistent reports to the AMR paramedics and Highland Hospital staff about his intent to commit suicide, a reasonable conclusion could also be drawn that the credibility of any reports he gave to medical providers about the mechanism of any claimed injury was suspect, particularly given the fact that Mr. Fowler had a motive to lie about Mr. Knapps' conduct which

Knapps v. City of Oakland, et al.. Case No.: C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

. - 11

ultimately led to him being placed on an involuntary "5150" psychiatric hold following the incident.

Therefore, Defendants have failed to establish that the AMR and Highland Records show the Court committed any manifest error in rendering the judgment in Plaintiff's favor and their motion for a new trial, or to alter or amend the judgment, should be denied.

**2. Defendants Failed to Establish any Manifest Error of Fact or Law With Regard to the Award of Damages for Plaintiffs' Wage Loss**

Plaintiff was entitled to recover compensatory damages for all actual economic harm he suffered, including wage loss. *Borunda v. Richmond,* 885 F. 2d 1384, 1389 (9th Cir. 1988). The totality of the evidence at trial supported the Court's reasonable conclusion that Mr. Knapps was entitled to an award of damages for the loss of his employment with the Hodges residential facility. (FFCL, supra, 50:8-51:27)

As shown above, Officer Cardoza admitted telling Mr. Hodges on the night of the incident that Mr. Knapps punched Mr. Fowler when Officer Cardoza knew Mr. Knapps had not punched Mr. Fowler. The evidence reflected that Mr. Hodges told Mr. Knapps he could not return to work until the allegations were resolved.

Although Mr. Hodges claimed he saw an injury on Mr. Fowler during his testimony at trial, his claim was discredited by his inconsistent prior statements to the Oakland Police Department and to the Department of Social Services in which he did not claim he saw any injuries on Mr. Fowler.

In addition, a reasonable inference could be drawn that Mr. Hodges had a motive to lie and was biased against Mr. Knapps due to the Plaintiff exposing his criminal lack of worker's compensation insurance coverage for the injuries sustained by Mr. Knapps during this incident. Moreover, Mr. Hodges' inconsistent testimony on direct, cross-examination and re-direct, as

Knapps v. City of Oakland, et al.. Case No.: C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

. - 12

noted by the Court in its decision, in which he first claimed Mr. Knapps was not allowed to use any force at all on Mr. Fowler, even to prevent him from running into traffic to commit suicide, and then admitted he could restrain him, but not take him to the ground, was not credible.

Clearly, the Court could draw the reasonable inference from this evidence that Mr. Knapps had the moral and legal right under California Penal Code Section 50 to use reasonable force to defend Mr. Fowler's life, that Mr. Hodges' claims to the contrary were not credible and that his testimony was the product of his post-incident bias against Mr. Knapps for exposing his criminal failure to have worker's compensation insurance. Therefore, Defendants have failed to establish that the Court committed manifest error in awarding wage loss damages to Mr. Knapps based on the totality of evidence adduced at trial.

### 3. The Court Committed no Manifest Error in Determining Officer Cardoza Used Excessive Force on Plaintiff

Determining whether Officer Cardoza subjected Mr. Knapps to the use of excessive force in violation of the Fourth Amendment's prohibition against unreasonable seizures turned on the question of whether the force was objectively reasonable based on the totality of the circumstances he was confronted with at the time he employed the carotid hold and bent wrist lock. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

Relying exclusively on the medical records discussed, *supra*, Defendants argue the Court committed manifest error in determining that Officer Cardoza used excessive force on Mr. Knapps. As shown above, however, the medical records fail to conclusively establish that Mr. Knapps subjected Mr. Fowler to the violent assaulted claimed by Officers Cardoza and Rojas. Moreover, even if the Court could assume that the medical records corroborated Defendants' account, which they do not, the totality of the evidence supported the reasonable inference that Officer Cardoza subjected Mr. Knapps to a totally unnecessary and potentially lethal carotid hold

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion
. - 13

*after* any alleged assault on Mr. Fowler had already concluded and when Mr. Knapps was indisputably not engaging in any life threatening behavior, much less any significant resistance to the officers' authority. (FFCL, 7:18-11:16).

Plaintiff's police practices expert, Roger Clark, testified that Officer Cardoza's use of the carotid hold was unreasonable and excessive under the circumstances. (FFCL, 18:22-20:9). Defendants' police practices expert, Scott Seaman, also conceded that based on Plaintiff's account of the incident, in which Plaintiff testified he put his hands above his head after all contact with Mr. Fowler had ceased, Officer Cardoza should not have used any significant degree of force to take control of the Plaintiff and that the use of a carotid hold would be less appropriate. (FFCL, 22:28-23:9).

Defendants also ignore that in addition to the carotid hold, Officer Cardoza admitted that he placed Mr. Knapps in a bent wrist lock, a very painful hold, simply to bring Mr. Knapps to his feet and in the absence of any evidence of resistive conduct on the part of Mr. Knapps. (FFCL, 11:17-12:7). The testimony of both Plaintiff's and Defendant's police practices experts supported the reasonable conclusion that the use of this force on Mr. Knapps under these circumstances was unreasonable and excessive. (FFCL, 20:10-14; 24:10-13).

Therefore, Defendants have failed to establish that they are entitled to a new trial or to the alteration or amendment of the judgment based on Mr. Fowler's AMR and Highland Medical records where the totality of the evidence supported the reasonable inference that the use of the carotid hold and bent wrist lock violated Mr. Knapps' right to be free from an unreasonable seizure under the Fourth Amendment.

**4. The Court Committed No Manifest Error in Awarding Punitive Damages to Plaintiff**

Knapps v. City of Oakland, et al.. Case No.: C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion

. - 14

Punitive damages "are intended to redress the concrete loss that the Plaintiff has suffered by reason of the Defendant's wrongful conduct." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc*., 532 U.S. 424, 432 (2001). Under 42 Section 1983, punitive damages are recoverable when Defendants' conduct is motivated by evil intent or evidences a reckless or callous indifference to Plaintiffs' rights. *Smith v. Wade,* 461 U.S. 30 (1983).  The burden of proof of such damages is by a preponderance of the evidence under Federal substantive law. *See, In re Exxon Valdez*, 270 F.3d 1215, 1232 (9th Cir. 2001).  In determining if a punitive damages award is reasonable, the court must consider three "guideposts": (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003), *citing, BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-75 (1996). "[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 419; *Gore*, 517 U.S. at 575. "This principle reflects the accepted view that some wrongs are more blameworthy than others." *Gore*, 517 U.S. at 575-76.  As the Court in *Gore* noted, "nonviolent crimes are less serious than crimes marked by violence or the threat of violence" and "trickery and deceit are more reprehensible than negligence." Id.

Notwithstanding Defendants' assertions to the contrary (See, Def. Mot. 7:18-8:15), the *Gore/State Farm* guideposts supported the award of punitive damages based on 1) Officer Cardoza's reprehensible use of a carotid hold on a man whom he admitted was not actively engaged in assaultive conduct;  2) the use of a bent wrist lock employed to punish Mr. Knapps for his threat to sue the officers; and 3) Defendants' wrongful conduct and malicious prosecution of Plaintiff which Sgt. Kelly ratified knowing it was wrong.

### IV. CONCLUSION

Defendants have failed to establish any manifest error by the Court.  Defendants' motion for a new trial, or alternatively to alter or amend the judgment, should therefore be denied.

Dated: August 26, 2009                        _____/S/_____
                                              Julie M. Houk, Attorney for Plaintiff

Knapps v. City of Oakland, et al.. Case No.:  C05-2935 MEJ
Plaintiff's Memorandum of Pts. And Auth. In Oppos. To New Trial Motion