UNITED STATES DISTRICT COURT

Northern District of California

KNAPPS,

                Plaintiff(s),

  v.

CITY OF OAKLAND ET AL,

                Defendant(s).
_____/

No. C 05-02935 MEJ

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR NEW TRIAL AND/OR TO ALTER/AMEND JUDGMENT**

**DOCKET #93**

## I.   INTRODUCTION

Pending before the Court is Defendants' Motion for New Trial, or Alternatively, to Alter or Amend Judgment. (Dkt. #93.) Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for determination without oral argument and hereby VACATES the September 24, 2009 hearing. After careful consideration of the parties' papers, the record as a whole, relevant legal authority, and good cause appearing, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' motion for the reasons set forth below.

## II.   BACKGROUND

On August 3, 2009, the Court issued its Findings of Fact and Conclusions of Law ("FFCL") in this case, in which it found in favor of Plaintiff on his claims of excessive force, malicious prosecution, negligence, battery, and California Civil Code § 52.1. (Dkt. #90.) In addition to awarding Plaintiff compensatory damages in the amount of $125,555.20, it awarded him punitive damages of $30,000.00 against Officer Michael Cardoza, $20,000.00 against Defendant Officer

Francisco Rojas, and $5,000.00 against Defendant Sergeant James Kelly.[1]

On August 13, 2009, Defendants filed the present motion for a new trial and/or to alter judgment. Plaintiff filed an Opposition on August 26, 2009, (Dkt. #99), and Defendants filed their Reply on September 3, 2009 (Dkt. #101).

### III.   DISCUSSION

In their motion, Defendants raise four arguments: (1) Michael Fowler's ambulance and hospital records support the Defendants' version of the events that took place; (2) the evidence does not support the award for wage loss; (3) the finding that Officer Cardoza used excessive force must be amended to reflect consideration of Mr. Fowler's medical records; and (4) the contents of Mr. Fowler's medical records undermine the conclusion that the officers acted with evil intent, requiring reversal of the award of punitive damages. Based on these arguments, Defendants request that the Court amend its judgment to prevent manifest injustice. The Court shall consider each argument in turn.

**A.   Legal Standard**

Pursuant to Federal Rule of Civil Procedure 59(a)(2), "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of judgment. Fed. R. Civ. P. 59(a)(2). A court may grant a new trial or amend its judgment after a court-tried action for three reasons: (1) manifest error of law; (2) manifest error of fact; and (3) newly-discovered evidence. *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978).

**B.   Michael Fowler's Medical Records Do Not Support Defendants' Version of Events**

Defendants first argue that the Court failed to include any reference to or discussion of the medical examiners' notes and observations documenting Mr. Fowler's admission to Alameda County Hospital on August 10, 2004, following the subject incident. However, the Court considered, albeit not explicitly, Mr. Fowler's medical records in rendering its decision, and the

---

[1] Because the Court set forth the factual background of this case in detail in its findings, (Dkt. #90 at 2:2-29:10), it shall only discuss the facts as they are pertinent to the present motion.

2

1  records fail to establish that Plaintiff assaulted Mr. Fowler in the manner alleged by Officers
2  Cardoza and Rojas, and Defendants have failed to establish that the Court committed any manifest
3  error in rendering judgment in Plaintiff's favor.
4        First, the Court notes that Defendants chose not to call any of Mr. Fowler's medical
5  providers to testify at trial to confirm the source and content of the information contained in these
6  records or about the causation of any alleged pain or injuries to Mr. Fowler.  Prior to commencement
7  of trial, the parties stipulated both to the records' authenticity and that they shall not constitute
8  hearsay.  (Dkt. #64.)  However, they did not stipulate as to the meaning, weight, relevancy and
9  importance of these records at trial.
10       Turning to the medical records themselves, the first page of Mr. Fowler's American Medical
11 Response ("AMR") ambulance records state the chief complaint and history as: 5150, Med
12 Clearance with "possible fight."  (Rosen Decl., Ex. 2, AMR records, page 1).  The second page of
13 the AMR records reflect that Mr. Fowler did not sign the Master Signature Statement, and it was
14 reported he was "developmentally challenged."  (Rosen Decl, Ex. 2, page 2).  The PreHospital Care
15 Report, which appears as page three of this record, is not entirely legible and Defendants failed to
16 call any witness to interpret the illegible portions of the record.  (Rosen Decl., Ex. 2, p. 3).
17 Although the report makes a reference to Mr. Fowler being hit with a closed fist, the report does not
18 cite the source of this information.  (*Id.*)
19       However, a reasonable inference that can be drawn from the evidence is that the AMR report
20 was based on Officer Rojas' fabricated account of the assault.  This inference is supported by
21 Officer Rojas' testimony, in which he admitted that he told the paramedics that Mr. Fowler had been
22 assaulted and that he may have also told them that Mr. Fowler had been punched around the eye.
23 (FFCL, 12:18-21).  Therefore, the Court reasonably concluded that Officer Rojas' fabricated account
24 of the assault was the source of the information contained in the AMR record and, therefore,
25 discounted the importance or materiality of this record in rendering judgment in Plaintiff's favor.
26       Mr. Fowler's Highland Hospital records similarly fail to establish that the Court committed
27 manifest error.  As is the case with the AMR records, some of the entries on the Highland Hospital
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

3

records are not clearly legible, yet Defendants failed to call any of the Highland Hospital treating staff to testify as to the source, content, or interpretation of the information contained in these records.  (Rosen Decl., Ex. 2).

While Defendants argue that these records support the credibility of the accounts of Officers Cardoza and Rojas - that Plaintiff punched Mr. Fowler repeatedly with a closed fist in the face and torso during the incident on the public sidewalk - the Highland Hospital records state in two separate places that Mr. Fowler's alleged complaints of pain occurred as a result of an incident inside Mr. Fowler's home, rather than outside on the public sidewalk*.*  (Rosen Decl., Ex. 2, (Highland Hospital Emergency Department Flow Sheet and Emergency Department Record)).  Defendants failed to call any of Mr. Fowler's medical providers at Highland to explain the source of this information, and it is clearly not consistent with the evidence that the incident involving Plaintiff occurred outside, some distance away from the Hodges residential home.

As Defendants note in their motion, the Emergency Department Flow Sheet also appears to state that Mr. Fowler's head hit down when he was pushed backwards.  (Def. Mot. for New Trial, 3:20-23).  While Defendants claim that this record says it was an "employee" who pushed him backwards, the report is not clearly legible, and it does not identify by name the person who allegedly pushed him.  Regardless, this record is consistent with Plaintiff's use of reasonable force in taking Mr. Fowler to the ground to prevent his running into the street at the oncoming SUV.

The Highland Record also notes that the severity of Mr. Fowler's complaints was only 1 on a 10 point scale.  (Rosen Decl., Ex. 2, Highland Hospital Triage Chart).  Therefore, the Court reasonably concluded that Mr. Fowler's alleged complaint of minor pain was more likely attributable to Plaintiff's use of the take down to the sidewalk to prevent Mr. Fowler's running into the street, rather than the result of the alleged repeated punches to Mr. Fowler's face and torso.

Additionally, Defendants ask the Court to take these records on face value without considering the veracity of Mr. Fowler's own accounts about the incident.  However, Mr. Fowler was mentally impaired to such a degree he was placed on a 5150 hold, and it was noted he was unable to sign off on the AMR records.  Moreover, while the AMR record notes that Mr. Fowler

4

1 reported he had tried to commit suicide by walking into traffic (Rosen Decl., Ex. 2, PreHospital Care
2 Report), the Highland Hospital record states that Mr. Fowler gave an entirely inconsistent account
3 and denied suicidal ideation or that he intended to walk into traffic.  (Rosen Decl., Ex., 2, Highland
4 Campus Emergency Department Record.).

5 Given these facts, the Court reasonably concluded that Mr. Fowler's account of the incident
6 is not credible, including with respect to any reports he gave to medical providers about the alleged
7 mechanism of injury.  This is particularly true when he gave inconsistent accounts of his plan to
8 commit suicide to medical providers, and he possibly had a motive to retaliate against Plaintiff for
9 his belief that Plaintiff caused his involuntary psychiatric hold at Highland Hospital.[2]

10 Finally, while the Highland Hospital record mentions a complaint of orbital and right cheek
11 pain and a contusion that is not specific as to location, size or causation, Defendants failed to present
12 any evidence conclusively establishing that this alleged pain or unspecified contusion was caused by
13 the alleged assault claimed by Defendants, rather than as a result of Plaintiff's reasonable use of
14 force in taking Mr. Fowler to the ground.

15 Therefore, based on the totality of the evidence, Defendants have failed to establish that the
16 Court committed manifest error in determining that Plaintiff's account of the incident was more
17 credible than the accounts of Officers Cardoza and Rojas.

18 **B.     The Evidence Supports the Award for Wage Loss**

19 The Court awarded Plaintiff $15,000.00 in lost wages for the six month period from August
20 11, 2004 through February 11, 2005.  Defendants argue that the Court committed manifest error in
21 awarding any damages at all to Plaintiff for his wage loss.  The sole basis for Defendants' contention
22 in this regard is the inconsistent trial testimony of Plaintiff's former employer, Anthony Hodges.

23 The evidence at trial supported the reasonable inference that Plaintiff's wage loss was
24 proximately caused by the wrongful conduct of Defendants.  This evidence included Officer

---

[2] Mr. Fowler did not sign the voluntary admission form in the Highland Records.  A staff member, instead, reported that he was being detained under Welf. & Inst. Code 5150 as a danger to himself.  (Rosen Decl., Ex. 2, Highland Hospital, Close Observation Area, Psychiatric Emergency Service, Patient Advisement).

5

Cardoza's admission that he told Mr. Hodges that Plaintiff struck Mr. Fowler in the face on the night of the incident when, based on the totality of the evidence, this was not true. (FFCL, 12:1-13:21).

Although the Court found that Mr. Hodges did not observe any injuries to Mr. Fowler and did not report to the Department of Social Services that he saw any injuries, Mr. Hodges told Plaintiff that he would be removed from work until the allegations were resolved. The night of this incident was the last time Plaintiff worked at the Hodges facility. (FFCL, 16:12-17:18; Trial Tr. Day 3, 144:10-145:16).

When Mr. Hodges was called as a witness at trial, he claimed that he saw a bruise to the back of Mr. Fowler's neck after he returned to the facility from Highland Hospital. However, no one else involved in the case, including Hodges facility employee Jesse McDaniels (FFCL, 17:19-18:20), ever reported seeing any injury to the back of Mr. Fowler's neck. Moreover, Mr. Hodges' claim was belied by his own written report to the California Department of Social Services (which he admitted signing on the night of the incident), in which he represented that Mr. Fowler had sustained no injuries, including any bruises, cuts or lacerations. (Trial Tr., Day 3, 214:14-216:4, Ex. 42, Vendor's Special Incident Report). Mr. Hodges also admitted that he never reported in that form that Mr. Fowler had been punched during the incident or that Mr. Fowler ever told him that he had been punched by Plaintiff. (*Id.*)

Mr. Hodges' testimony that he saw an injury on Mr. Fowler following the incident was also belied by the tape recorded statement he gave to Sgt. Short of the Oakland Police Department on November 16, 2004, in which Mr. Hodges admitted never seeing any injury on Mr. Fowler, never mentioned that Mr. Fowler told him that Plaintiff allegedly assaulted him, and admitted that all of the information he received came from the police officers at the scene. (*Id.* at 216:5-217:19, Ex. 39, CD of Mr. Hodges' statement). Mr. Hodges also told Sgt. Short that Mr. Fowler had never complained about Plaintiff prior to the incident. (Ex. 39, CD Rom of Mr. Hodges' statement; Trial Tr., Day 3, 218:10-219:5).

Mr. Hodges' also gave inconsistent accounts about whether Plaintiff was allowed to physically restrain Mr. Fowler at all to prevent his running into the street. (Trial Tr., Day 3, 219:20-

6

221:8). As the Court noted in its FFCL, Mr. Hodges' testimony on this issue varied on direct, cross-examination and re-direct, in which he first claimed that Plaintiff was not allowed to use any force at all on Mr. Fowler, even to prevent him from running into traffic to commit suicide, and then admitted he could restrain him, but not take him to the ground.

Finally, the Court also notes that when Plaintiff sought medical treatment for the injuries he suffered as a result of Officer Cardoza's use of force, he learned that Mr. Hodges illegally failed to have worker's compensation insurance coverage. (FFCL 17:16-18; Trial Tr. Day 3, 145:17-150:5). Therefore, by the time the trial in this case took place, it is apparent that Mr. Hodges had a motive to lie and was biased against Plaintiff due to his exposing Mr. Hodges' lack of worker's compensation insurance coverage for the injuries sustained by Plaintiff during this incident. (See, Trial Transcript Day 3, 217:20-218:9; California Labor Code Section 3700.5).

In light of his inconsistent testimony, the Court reasonably determined that Mr. Hodges was biased against Plaintiff and that his testimony was not credible. Therefore, Defendants failed to show that the Court committed any manifest error in its award of wage loss to Plaintiff based on Mr. Hodges' testimony.

**C.    The Court Committed No Manifest Error in Determining that Officer Cardoza Used Excessive Force**

Defendants next argue that the Court must amend its finding that Officer Cardoza used excessive force. Determining whether Officer Cardoza subjected Plaintiff to the use of excessive force in violation of the Fourth Amendment's prohibition against unreasonable seizures turned on the question of whether the force was objectively reasonable based on the totality of the circumstances he was confronted with at the time he employed the carotid hold and bent wrist lock. *Graham v. Connor*, 490 U.S. 386, 388 (1989).

Relying exclusively on the medical records discussed above, Defendants argue that the Court committed manifest error in determining that Officer Cardoza used excessive force on Plaintiff. As shown above, however, the medical records fail to conclusively establish that Plaintiff subjected Mr. Fowler to the violent assault claimed by Officers Cardoza and Rojas. Moreover, even if the Court

7

were to assume that the medical records corroborated Defendants' account, which they do not, the totality of the evidence supported the reasonable inference that Officer Cardoza subjected Plaintiff to an unnecessary and potentially lethal carotid hold *after* any alleged assault on Mr. Fowler had already concluded, and when Plaintiff was indisputably not engaging in any life-threatening behavior, much less any significant resistance to the officers' authority. (FFCL, 7:18-11:16).

Plaintiff's police practices expert, Roger Clark, testified that Officer Cardoza's use of the carotid hold was unreasonable and excessive under the circumstances. (FFCL, 18:22-20:9). Defendants' police practices expert, Scott Seaman, also conceded that based on Plaintiff's account of the incident, in which Plaintiff testified he put his hands above his head after all contact with Mr. Fowler had ceased, Officer Cardoza should not have used any significant degree of force to take control of the Plaintiff and that the use of a carotid hold would be less appropriate. (FFCL, 22:28-23:9).

In addition to the carotid hold, Officer Cardoza admitted that he placed Plaintiff in a bent wrist lock simply to bring Plaintiff to his feet, in the absence of any evidence of resistive conduct on the part of Plaintiff. (FFCL, 11:17-12:7). The testimony of both Plaintiff's and Defendants' police practices experts supported the conclusion that the use of this force under these circumstances was unreasonable and excessive. (FFCL, 20:10-14; 24:10-13).

Therefore, Defendants have failed to establish that the Court committed any manifest error in rendering judgment in favor of Plaintiff as a result of Officer Cardoza's use of excessive force.

**D.     Punitive Damages**

Finally, Defendants argue that the contents of Mr. Fowler's medical records undermine the Court's conclusion that punitive damages should be awarded against the defendant officers. However, the Court based its award of punitive damages on 1) Officer Cardoza's inappropriate use of a carotid hold on a man whom he admitted was not actively engaged in assaultive conduct;  2) the use of a bent wrist lock when it was unnecessary; and 3) Defendants' wrongful conduct and malicious prosecution of Plaintiff.  As discussed above, Mr. Fowler's medical records do not alter this conclusion.  Therefore, the Court finds Defendants' argument unpersuasive as to punitive

8

damages against Officers Cardoza and Rojas.

However, upon reconsideration of the evidence presented in this case, the Court finds that punitive damages are not appropriate against Sgt. Kelly. Although Sgt. Kelly ratified the officers' reports and testified in the DSS proceedings, Plaintiff did not establish that he knew the officers fabricated their reports, and his testimony was based solely on what he witnessed. Given the circumstances at the scene, it is unfortunate that Sgt. Kelly did not keep the officers separate until their reports had been prepared, but it does not appear that this failure was malicious, or motivated by evil motive or intent. Accordingly, the Court shall amend the August 3, 2009 Judgment to remove the $5,000.00 punitive damages award against St. Kelly.

## IV.   CONCLUSION

Based on the foregoing analysis, the Court finds that, with the exception of the $5,000.00 punitive damages award against Sgt. Kelly, Defendants have failed to establish that it committed manifest error of law or fact in rendering judgment in favor of Plaintiff. Accordingly, Defendants' motion for new trial, or in the alternative, to alter or amend the judgment, is hereby GRANTED IN PART as to punitive damages against Sgt. Kelly and DENIED IN PART as to the remainder of the judgment. The August 3, 2009 Judgment is hereby AMENDED to remove the $5,000.00 punitive damages award against Sgt. Kelly.

**IT IS SO ORDERED.**

Dated: September 8, 2009                                    _____
                                                            Maria-Elena James
                                                            Chief United States Magistrate Judge